IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RACHEL J.,[1]                                                  No. 6:22-cv-00158-HZ

            Plaintiff,                                  OPINION & ORDER

     v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

            Defendant.


Katherine L. Eitenmiller
Katie Taylor
WELLS, MANNING, EITENMILLER & TAYLOR, P.C.
474 Willamette Street
Eugene, Oregon 97401

     Attorneys for Plaintiff

Kevin Danielson
Assistant United States Attorney
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

Justin L. Martin
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

     Attorneys for Defendant

HERNÁNDEZ, District Judge:

     Plaintiff Rachel J. brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits ("DIB"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). The Court affirms the Commissioner's decision.

## PROCEDURAL BACKGROUND

     Plaintiff applied for DIB on May 28, 2018, alleging an onset date of April 30, 2015. Tr. 64, 73.[2] Plaintiff's date last insured ("DLI") is December 31, 2016. Tr. 64, 74. Her application was denied initially and on reconsideration. Tr. 72, 86. Plaintiff had previously filed a disability claim, which was denied at the initial level in June 2016. Tr. 189.

     On January 13, 2021, Plaintiff appeared with counsel for a hearing before an Administrative Law Judge ("ALJ"). Tr. 35. On February 25, 2021, the ALJ found Plaintiff not disabled. Tr. 27. The Appeals Council denied review. Tr. 1.

## FACTUAL BACKGROUND

     Plaintiff alleges disability based on "cervical dystonia, essential tremors, cognitive loss, major depressive disorder, agoraphobia, panic disorder/anxiety, bi-polar, insomnia, chronic fatigue, [and] Epstein Barr." Tr. 192. At the time of her alleged onset date, she was 35 years old.

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 10.

Tr. 64. She has a high school education and past relevant work experience as a "Caregiver, Home Attendant." Tr. 26.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform their "past relevant work."

20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner meets their burden and proves that the claimant can perform other work that exists in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after her alleged onset date through her date last insured. Tr. 18. Next, at steps two and three, the ALJ determined that Plaintiff has the following severe impairments: "affective disorder; anxiety disorder; and substance abuse disorder." Tr. 18. However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 18. At step four, the ALJ concluded that Plaintiff has the residual functional capacity to perform "a full range of work at all exertional levels" with the following limitations:

> [T]he claimant can perform only simple, routine, repetitive tasks with DOT GED reasoning level of 2 or less. The claimant can have no public interaction and occasional interaction with supervisors and co-workers. The claimant requires a static work environment with few changes in work routines and settings. The work environment should not expose the claimant to hazards.

Tr. 20. Because of these limitations, the ALJ concluded that Plaintiff could not perform her past relevant work. Tr. 26. But at step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as "Machine Packager," "Laundry Worker," and "Hand Packager." Tr. 25. Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 27.

**STANDARD OF REVIEW**

A court may set aside the Commissioner's denial of benefits only when the

Commissioner's findings "are based on legal error or are not supported by substantial evidence

in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal

quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a

preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a

whole, including both the evidence that supports and detracts from the Commissioner's decision.

*Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is

susceptible to more than one rational interpretation, the ALJ's decision must be affirmed."

*Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v.*

*Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either

a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's.") (internal

quotation marks omitted).

**DISCUSSION**

Plaintiff argues the ALJ erred in (1) evaluating the medical opinion evidence, (2)

improperly rejecting Plaintiff's subjective symptom testimony, and (3) improperly rejecting lay

testimony by Plaintiff's spouse and mother. Pl. Br., ECF 13. The Court disagrees.

**I.      Medical Opinion Evidence**

Plaintiff argues that the ALJ erred in rejecting the opinions of Drs. Kessler, Succar, Choi,

and Guggenheim. Specifically, Plaintiff challenges the ALJ's findings that (1) Dr. Kessler's

opinion was only "partially persuasive," Tr. 22, and (2) Drs. Succar, Choi, and Guggenheim's

opinions were "not persuasive," Tr. 24. For claims filed on or after March 27, 2017, ALJs are no

longer required to give deference to any medical opinion, including treating source opinions. Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. Instead, the agency considers several factors. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). These are: supportability, consistency, relationship to the claimant, specialization, and "other factors." 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). The "most important" factors in the evaluation process are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

Under this framework, the ALJ must "articulate . . . how persuasive [they] find all of the medical opinions" from each doctor or other source. 20 C.F.R. §§ 404.1520c(b), 416.920c(b)(2). In doing so, the ALJ is required to explain how supportability and consistency were considered and may explain how the other factors were considered. 20 C.F.R §§ 404.1520c(b)(2), 416.920c(b)(2). When two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how the other factors were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3). "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

A.     Dr. Kessler

Plaintiff argues that the ALJ erred in finding Dr. Kessler's opinion "partially persuasive." Pl. Br. 7 (quoting Tr. 22). Dr. Kessler reviewed Plaintiff's psychological record on June 16, 2016, for the state agency as part of Plaintiff's previous claim for disability benefits. Tr. 95. Dr. Kessler found that Plaintiff suffered from an affective disorder, anxiety disorder, and substance

addiction disorder. Tr. 95. First, Dr. Kessler opined that Plaintiff's ability to understand and remember detailed instructions was "moderately limited" because she could "understand complex instructions" but "only recall at a span of two-step commands." Tr. 97. Second, in evaluating Plaintiff's sustained concentration and persistence capacities, Dr. Kessler noted she was "likely able to understand, remember, and carry out more detailed instruction, but more complex tasks are also likely to cause an increase in anxiety stressors, so she should be limited to simple, repetitive work." Tr. 97.

The ALJ found Dr. Kessler's opinion partially persuasive. First, the ALJ accepted Dr. Kessler's opinion limiting Plaintiff to "simple, repetitive tasks," finding the record supported it. Tr. 22. However, the ALJ rejected Dr. Kessler's opinion limiting Plaintiff to two-step commands because (1) it was not supported by the record and (2) it was "somewhat confusing." Tr. 22. Specifically, the ALJ found Dr. Kessler's opinion that Plaintiff "can only recall at a span of two-step commands" inconsistent with Dr. Kessler's opinion that Plaintiff "is likely able to understand, remember, and carry out more detailed instruction." Tr. 22 (quoting Tr. 97). The ALJ found the two parts of the opinion "disjointed." Tr. 22. He therefore discounted the first limitation in light of both the medical record and the inconsistency between Dr. Kessler's findings. The ALJ concluded that so long as Plaintiff avoided more complicated tasks that would aggravate her anxiety symptoms—in turn adversely affecting her work habits—she "could still perform 'simple, repetitive work' with her moderate limitation in maintaining concentration, persistence or pace." Tr. 22–23 (quoting Tr. 97).

Plaintiff argues the ALJ erred in discounting Dr. Kessler's testimony by (1) "conflat[ing]" the two comments by Dr. Kessler and (2) failing to reconcile an apparent conflict between a limitation to two-step commands and the requirements of Reasoning Level Two. Pl.

Br. 7–8. Plaintiff argues that Dr. Kessler's two comments are not "disjointed," as the ALJ found, but rather supplementary. *Id*. The limitation to two-step commands, Plaintiff argues, functions as an "*additional* limitation," one that builds on rather than contradicts Dr. Kessler's finding on Plaintiff's limited concentration and persistence. *Id.* at 8. Specifically, Plaintiff argues that Dr. Kessler's two limitations have different bases. Whereas Dr. Kessler limited Plaintiff to "simple, repetitive work" because of her difficulties in concentration and persistence, the second limitation—to "two-step commands"—was "based on [her] limited *recall*." *Id.* at 7.

Even if Plaintiff were correct in demonstrating an error in the ALJ's reasons for finding Dr. Kessler's opinion inconsistent, Plaintiff does not address the ALJ's second reason for discounting Dr. Kessler's opinion: supportability. The ALJ found that Plaintiff "consistently had normal memory during her examinations" while noting that Plaintiff "told her provider that she was experiencing short-term memory loss." Tr. 18. During the relevant period, there were eight medical reports. Dr. Kessler's opinion included the first six. Of those six mental status examinations, three listed memory as intact for content of interview, Tr. 1122, 1125, 1128, and three listed short-term memory impaired by self-report, Tr. 1131, 1134, 1138. However, the ALJ (as discussed further below) rejected Plaintiff's subjective symptom testimony. Tr. 21. Of the six reports, two listed memory loss under reasons for visit. Tr. 1133, 1136. But other than in self-report, memory difficulties did not appear in any of Dr. Kessler's notes throughout the six reports.[3] Even at the one visit Plaintiff presented as anxious, distracted, sad, and with racing thoughts, these conditions did not affect her memory as indicated by the mental status report. Tr. 1121–22. Rather the mental status report still listed Plaintiff's memory as "intact for content of

---

[3] Memory difficulties are listed in the last two reports, but both of those reports are from appointments after Dr. Kessler provided his June 16, 2016 opinion. *See* Tr. 1140, 1143.

interview." Tr. 1122. In sum, nothing in the record from the period relevant to Dr. Kessler's opinion indicated that Plaintiff could only recall at a span of two-steps. To the contrary, the record indicates that despite self-reported memory problems, Plaintiff's memory remained intact with normal functioning.

The Court concludes that the ALJ did not err in finding that the medical record did not support Dr. Kessler's limitation of Plaintiff to performing tasks with "two-step commands." Because the Court finds this part of Dr. Kessler's opinion was not supported by the record and therefore the ALJ did not err in finding Dr. Kessler's opinion partially persuasive, the Court does not address Plaintiff's second argument that the ALJ failed to reconcile an "apparent conflict" in Dr. Kessler's opinion. In conclusion, the ALJ did not err in his analysis of Dr. Kessler's medical opinion.

B.    Drs. Succar, Choi, and Guggenheim

Plaintiff argues that the ALJ erred in finding Drs. Succar, Choi, and Guggenheim's opinions "not persuasive." Pl. Br. 12–13 (quoting Tr. 24). Dr. Succar saw Plaintiff twice, in September 2019 and sometime between September 2019 and March 2020. In his March 2020 treating source statement, he diagnosed Plaintiff with tremors, chronic fatigue, dystopia, depression with anxiety, postural orthostatic tachycardia syndrome, and mast cell activation syndrome. Tr. 602. Dr. Succar identified the relevant signs—including clinical findings and test results—as "tremor and dystonia on physical exam, clinically followed by psychiatry as well" and "orthostatic tachycardia." Tr. 603. According to Dr. Succar, these conditions caused significant functional limitations in Plaintiff's ability to work a regular work schedule, including difficulty lifting; doing repetitive reaching, handling, or fingering; and sitting, standing, and

walking. Tr. 603–06. Finally, Dr. Succar opined that Plaintiff's symptoms "started in 2015" and that her limitations were present prior to Plaintiff's DLI of December 31, 2016. Tr. 606.

Dr. Guggenheim began treating Plaintiff in July 2019 and saw her every three months. Tr. 1335. In her December 2020 treating source statement, Dr. Guggenheim diagnosed Plaintiff with hypermobile spectrum disorder, dysautonomia, postural orthostatic tachycardia syndrome, and mast cell activation syndrome. Tr. 1335. Symptoms included cognitive dysfunction, generalized weakness, fatigue, tremors (head and body), anxiety, depression, rashes, chemical sensitivity, abdominal pain, and hives. Tr. 1336. According to Dr. Guggenheim, Plaintiff's symptoms were "very consistent" with the above diagnoses, and laboratory results further corroborated them. Tr. 1336. Dr. Guggenheim concluded that these conditions would substantially restrict Plaintiff's ability to perform and maintain a regular work schedule and would cause significant functional limitations. Tr. 1336–39. However, Dr. Guggenheim opined that Plaintiff's limitations were not present prior to December 31, 2016. Tr. 1339. Even though she found severe anxiety began in 2015 and fatigue and cognitive dysfunction in early 2016, Dr. Guggenheim concluded, "it is unclear if symptom severity at that time prevented work." Tr. 1339.

Dr. Choi started treating Plaintiff in July 2018 and saw her regularly every six to eight weeks. Tr. 607. In his August 2020 medical source statement, he diagnosed Plaintiff with major depression and panic disorder with agoraphobia. Tr. 608. Symptoms included severe anxiety, fatigue, exhaustion, depression, and severe tremor of the head (which may have been a side effect of previous medication). Tr. 608. Dr. Choi opined that Plaintiff was "severely limited" in her ability to function in a work setting. Tr. 608. Specifically, he found Plaintiff had marked difficulty with understanding, remembering, and carrying out complex instructions; marked

difficulties interacting with the public and co-workers, and difficulty maintaining attention and concentration for extended periods. Tr. 611–13.[4] Dr. Choi cited severe anxiety and mental fatigue to support these limitations. Tr. 613. He noted that "fatigue ha[d] been a consistent finding the past 20 years." Tr. 612. When prompted by the questionnaire, Dr. Choi opined that Plaintiff's limitations began in 2016, Tr. 612, and were thus present prior to the DLI, Tr. 614. He supported this finding by noting that Plaintiff "was seeing another M.D. psychiatrist in . . . 2016 and records indicate severe symptoms then as well." Tr. 614.

The ALJ rejected the three doctors' medical opinions for three reasons: (1) they were "not supported by the evidence;" (2) they were "not consistent" with the medical record; and (3) each of the three doctors did not begin treating Plaintiff until years after the DLI, and none of them "offer[ed] an explanation as to what they based their opinion on . . . ." Tr. 24. The ALJ suggested that Dr. Succar's two visits with Plaintiff were insufficient to support his opinion that Plaintiff's limitations had started in 2015. Tr. 24. The ALJ highlighted Dr. Guggenheim's conclusion that it was "unclear if symptom severity prevented work" during the relevant period. Tr. 24 (quoting Tr. 1339). The Commissioner further points out that Dr. Guggenheim stated, by checking a box, that Plaintiff's symptoms had not been present prior to December 31, 2016. Def. Br. 9 (quoting Tr. 1339).

The ALJ did not err in rejecting the three doctors' medical opinions. One of the overriding contentions of the ALJ was that that none of three doctors "described any medically reasonable tactic they used to arrive at these conclusions, such as reviewing the records" before the DLI. Tr. 24. This statement is accurate for Drs. Succar and Guggenheim's opinions. Neither

---

[4] The parties do not dispute Plaintiff's limitations in interacting with the public and co-workers. The ALJ incorporated these limitations in determining Plaintiff's RFC, noting that Plaintiff could "have no public interaction and occasional interaction with supervisors and co-workers." Tr. 20.

doctor directly referenced the medical record during the relevant period to support their opinions. *See* Tr. 602–06, 1335–39. Dr. Succar opined that Plaintiff's limitations "started in 2015," and he checked a box indicating that those limitations had been present prior to Plaintiff's DLI of December 31, 2016. Tr. 606.  However, Dr. Succar neither elaborated on those findings nor indicated how he arrived at them. At no point did he cite to, reference, or allude to the medical record during the relevant period. Although Dr. Guggenheim did allude to the medical record during the relevant period, she concluded that Plaintiff's limitations were not present prior to the DLI and that "it [was] unclear" whether the severity of Plaintiff's symptoms would have prevented her from working during the relevant period. Tr. 1339.  In contrast, the ALJ's statement is inaccurate for Dr. Choi. Dr. Choi did directly reference Plaintiff's medical record during the relevant period, noting that Plaintiff's fatigue had been "a consistent finding the past 20 years," Tr. 612, and that Plaintiff "was seeing another M.D. psychiatrist . . . . and records indicate symptoms [in 2016] as well," Tr. 614. Although the ALJ erred with respect to Dr. Choi's opinion, the Court finds this error to be harmless because of the ALJ's second reason for rejecting the three doctors' medical opinions: inconsistency with the medical record.

To demonstrate these inconsistencies, the ALJ catalogued records from December 5, 2012, to April 21, 2017. He concluded that, contrary to the doctors' opinions, the records generally indicated that Plaintiff had "intact cognition, adequate fund of knowledge, logical thought processes, normal thought content, intact associations, normal memory, normal concentration, orientation, and alertness." Tr. 24. The ALJ further found in the records during the same period that Plaintiff had "cooperative mood and pleasant behavior, appropriate mood, euthymic affect, good eye contact, and normal speech." Tr. 24. Finally, contrary to the three doctors' opinions, the ALJ noted that the records indicated Plaintiff had "normal insight and

judgment, adequate and neat grooming and hygiene, lack of paranoia, and absence of hallucinations." Tr. 24.

The Court finds that the ALJ's findings are supported by substantial evidence. Of the eight medical reports from the relevant period, five describe Plaintiff's thought process as normal and logical, attention and concentration as able to focus, fund of knowledge as intact and appropriate to age and level of education, insight as intact, and judgment as adequate to the circumstances. Tr. 1125, 1128, 1131, 1134, 1138. One report listed Plaintiff's behavior, affect, thought process, and thought content as normal; insight and judgment as fair; and cognition as grossly intact. Tr. 1141–42. The last report listed Plaintiff's thought process, associations, and attention as intact, insight as fair, judgment as good, and memory as oriented to person, place, time, and situation. Tr. 1145. This leaves only one visit—that of May 8, 2015, shortly after Plaintiff was fired from her job—that listed thought process as racing, attention span and concentration as distracted. Tr. 1122. In the seven other reports, memory was listed as intact for content of interview, Tr. 1122, 1125, 1128, short-term memory impaired by self-report, Tr. 1131, 1134, 1138, one not listed, Tr. 1141–42, and "oriented 4x," that is, oriented as to person, place, time, and situation, Tr. 1145. Plaintiff's mood fluctuated between anxious, Tr. 1122, to euthymic, Tr. 1125, 1128, back to anxious, Tr. 1131, 1134, 1138, 1141, to finally depressed and anxious, Tr. 1145. Despite these fluctuations in mood and some adjustments in medication, as the Court noted in reviewing Dr. Kessler's opinion, the record indicates that Plaintiff continued to show relatively normal mental functioning as indicated by mental status reports and the treating doctor's comments. Finally, during Plaintiff's psychiatric evaluation in October 2016— despite self-reporting anxiety, depression, problems in focusing, and memory difficulties—the

mini-mental state exam reported a score of 29/30.[5] Tr. 1143. The examining provider told

Plaintiff her "subjective memory difficulties might have to do with her decreased mood," Tr.

1143, and the mental status report listed thought process, associations, and attention as intact;

memory as oriented to person, place, time, and situation; insight as fair; and judgment as good,

Tr. 1145.

      In conclusion, the medical record indicates that Plaintiff's symptoms during the relevant

period were not so severe as to limit Plaintiff to the extent Drs. Succar, Choi, and Guggenheim

opined. Specifically, Dr. Choi's opinion that Plaintiff was "severely limited" because of her

marked difficulty with understanding, remembering, and carrying out complex instructions as

well as difficulty maintaining attention and concentration for extended periods is contradicted by

the medical record that—aside from situational stressors—consistently indicates normal

memory, ability to focus, and logical thought process. The ALJ therefore did not err in

discounting their opinions. Rather, the ALJ provided an explanation supported by substantial

evidence for doing so. *See Anderson v. Saul*, 818 F. App'x 709, 711 (9th Cir. 2020) (ALJ was

"justified" in rejecting opinion of doctor who assessed Plaintiff after the DLI because the

"retroactive opinion was contradicted by . . . the objective medical record."). In conclusion, the

ALJ did not err in his analysis of the medical opinions of Drs. Succar, Choi, and Guggenheim.

*///*

---

[5] The mini-mental state examination is a tool for assessing mental status that focuses on testing memory. George Newman, *How to Assess Mental Status*, Merck Manual (Sept. 2022), https://www.merckmanuals.com/professional/neurologic-disorders/neurologic-examination/how-to-assess-mental-status#v1030587; *see also Gregory v. Berryhill,* No. 6:17-CV-00167-PK, 2018 WL 1997801, at *11 (D. Or. Mar. 12, 2018), *report and recommendation adopted*, No. 6:17-CV-00167-PK, 2018 WL 1997753 (D. Or. Apr. 26, 2018) (upholding ALJ's decision in part because "near perfect score on the MMSE" was "sufficiently clear and convincing basis" for discounting consulting physician's opinion).

II.     **Subjective Symptom Testimony**

Plaintiff argues the ALJ erred in rejecting her subjective symptom testimony. The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). The ALJ engages in a two-step analysis for subjective symptom evaluation. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (superseded on other grounds). First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotations omitted). Second, "if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms." *Id.* (internal quotations omitted).

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). "An ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony.").

In her October 2018 Function Report, Plaintiff reported suffering from "extreme anxiety and depression." Tr. 205. She indicated that she spent most days in bed crying and having

negative thoughts. Tr. 205. She complained that her memory was "awful," that her head shook "uncontrollably," and that she could not communicate with people. Tr. 205. Plaintiff relied extensively on her husband: "[m]y husband does everything," including paying bills, doing house and yard work, cooking, and transporting children. Tr. 206. Plaintiff reported that her three children—aged eighteen, sixteen, and ten—"take care of themselves" and "take care of [her]." Tr. 206. She reported "never feel[ing] rested" and not "trust[ing] [her] body and mind." Tr. 206, 208. She described avoiding social activities but could still "go[] to church regularly." Tr. 210, 209. She reported that her attention was limited to "two seconds." Tr. 210. In a follow up questionnaire, Plaintiff reported her "extreme fatigue" began in "Oct-Nov 2016." Tr. 230.

At the hearing, Plaintiff testified that during the relevant period she could not have worked full time because of her fatigue, depression, anxiety around people, and difficulties concentrating. Tr. 54–55. She testified that during the relevant period she was "[v]ery, very fatigued. Off and on every day." Tr. 51. She specified that during the relevant period her tremors were constant, lasting "[a]ll day long." Tr. 48. She further testified that her panic attacks lasted "about an hour" and occurred "a couple times a week" starting in February 2013 and continuing through April 2015. Tr. 45. According to her testimony, during the relevant period she would forget meals, words, appointments, and where she had put things. Tr. 51. She further testified that she suffered from racing thoughts "all the time pretty much." Tr. 54. Finally, she stated that her mental health had not improved since the relevant period and that, to the contrary, "it [was] worse." Tr. 54.

The ALJ rejected Plaintiff's subjective symptom testimony for three reasons: (1) it was inconsistent with the objective medical evidence, which shows that Plaintiff's condition

improved and stabilized with treatment; and (2) Plaintiff's daily reported activities undermined her subjective testimony.

A.    Inconsistency with the Medical Record and Improvement with Treatment

The ALJ is instructed to consider objective evidence in considering a claimant's symptom allegations. 20 C.F.R. § 416.929(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms[.]"). Inconsistency between Plaintiff's testimony and the objective medical record is a valid reason to discount Plaintiff's testimony. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (affirming the ALJ's credibility finding where the plaintiff's testimony of weight fluctuation was inconsistent with the medical record). The ALJ may also take into account the effectiveness of any treatment. *See Orteza v. Shalala,* 50 F.3d 748, 750 (9th Cir. 1995) ("Factors that the adjudicator may consider when making such credibility determinations include the . . . effectiveness or adverse side effects of any pain medication."). And under certain circumstances, the ALJ can discount claimant testimony when that testimony is not supported by the objective medical record. *See Batson,* 359 F.3d at 1196 (9th Cir. 2007) ("'Graphic and expansive' pain symptoms could not be explained on objective, physical basis by claimant's treating physician."); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (The ALJ could consider mild findings on MRIs and X-rays in discounting the plaintiff's testimony as to her back pain.). However, this may not be the ALJ's sole reason for discounting a claimant's testimony: "the Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence." *Reddick,* 157 F.3d at 722.

Although the ALJ found Plaintiff's impairments could reasonably be expected to cause her alleged symptoms, he rejected Plaintiff's subjective symptom testimony as "not entirely consistent" with the objective medical evidence. Tr. 21. First, the ALJ noted that the record indicated that Plaintiff's panic attacks had "resolved with Ativan." Tr. 21. Second, the ALJ highlighted that, despite Plaintiff's self-reported problems with short term memory, there was "only one instance of abnormal focus and concentration through the period at issue" and her mental status examinations remained normal. Tr. 21. He further noted that, following situational stressors, by July 2015 Plaintiff reported "doing better." Tr. 21 (quoting Tr. 1363). Finally, the ALJ found that the medical record indicated that by May 2016 Plaintiff reported improvements in anxiety and that throughout 2016 her mental status examinations "remained relatively normal." Tr. 22.

The ALJ gave specific, clear, and convincing reasons for finding Plaintiff's subjective testimony inconsistent with the medical record. As noted above, of the eight medical records during the relevant period only one reports Plaintiff's thought process as racing, and her attention span and concentration as distracted. Tr. 1122. Despite some fluctuation and changes in medications, the record generally indicates Plaintiff's mood and depression had improved by her DLI after confronting situational stressors. Tr. 1123, 1124 ("doing better now"), 1127 ("depressed mood is generally continuing to be stable on her medication"), 1128 ("[c]oping with parenting challenges well"), 1132 ("patient's problem(s) is/are improved"), 1137 ("added gabapentin is helping with her anxiety"), 1139 (Plaintiff "is improved since her last visit"; mood and anxiety under "fair control"). When starting psychiatric treatment in June 2016, Plaintiff reported, "takes two 90 minute naps . . . . fatigue and cognitive symptoms are getting worse." Tr. 1140. But the mental status evaluation nonetheless showed behavior, speech, affect, thought

process, and thought content as "normal"; cognition as "grossly intact"; and insight and judgment as "fair." 1141–42. The subsequent psychiatric evaluation stated, "An MMSE [mini-mental state examination] done today reveals a score of 29/30." Tr. 1143. Indeed, Plaintiff's provider suggested that her "subjective memory difficulties might have to do with her decreased mood." Tr. 1143. Because these records are inconsistent with Plaintiff's testimony in both her Function Report and her testimony at the hearing that she struggles with memory, ability to focus, anxiety, and extreme fatigue the ALJ did not err in rejecting Plaintiff's subjective symptom testimony.

    B.    Activities of Daily Living

Contradiction with a claimant's activities of daily living is a clear and convincing reason for rejecting a claimant's testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). There are two grounds for using daily activities to form the basis of an adverse credibility determination: (1) when activities meet the threshold for transferable work skills and (2) when activities contradict a claimant's other testimony. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). However, "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations," *Reddick*, 157 F.3d at 722, and "the mere fact that a plaintiff has carried on with certain daily activities, such as grocery shopping . . . does not in any way detract from his credibility," *Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005) (citing *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)). In order to impact a claimant's credibility, the activity has to be "inconsistent with claimant's claimed limitations." *Reddick*, 157 F.3d 722. The ALJ cannot mischaracterize statements and documents in the record or take these out of context in order to reach his conclusion on the claimant's credibility. *Id.* at 722–23.

The ALJ cited Plaintiff's reported daily activities in discounting her subjective symptom testimony. These included playing games on her phone, doing laundry, doing dishes, and doing personal care activities without reminders. Tr. 21. The ALJ also noted that Plaintiff talked with her mother and a close friend daily, went to church on Sundays, and had never been fired due to social or behavioral problems. Tr. 21.

The ALJ's findings are not supported by substantial evidence. According to the Plaintiff's October 2018 Function Report, she had only been going to church "for the last two months." Tr. 209. The ALJ offered no explanation how this activity—started over two years after the DLI—undermined Plaintiff's testimony. Similarly, the ALJ takes many of Plaintiff's activities out of context. Plaintiff reported that she could do simple personal care tasks but often needed to rest afterward. Tr. 207. According to her report, she prepared simple meals only twice a month. Tr. 207. She further reported that she did one load a laundry a day, did ten minutes of dishes, and vacuuming often took three hours with breaks. Tr. 208. She noted that she communicated with her mother and best friend "just on the phone" and generally did not leave her house. Tr. 209. Dr. Moner reported that during the relevant period Plaintiff played games on her phone for ten minutes at a time twenty times a day. Tr. 93. With each of these activities, the ALJ did not provide specific, clear, and convincing reasons why they undermine Plaintiff's subjective symptom testimony. However, because the ALJ did not err in rejecting Plaintiff's subjective symptom testimony as inconsistent with the medical record, the Court affirms the ALJ's decision to reject Plaintiff's testimony.

## III.    Lay Witness Testimony

Plaintiff argues that the ALJ erred in rejecting lay witness testimony from her spouse and her mother. In December 2018, Plaintiff's spouse—Matthew—filled out a third-party Function

Report, stating that Plaintiff's "emotional state and anxiety limit[ed] her ability to work." Tr. 245. He reported Plaintiff had difficulties performing basic household activities and was limited to occasionally preparing simple meals and doing one or two load(s) of laundry a day. Tr. 247. He stated that when Plaintiff goes out in public, she "acts confused, cries unexpectedly." Tr. 248. According to Matthew, Plaintiff's crying, lack of concentration, and inability to focus meant she could not pay bills or handle a savings account. Tr. 248. He stated that Plaintiff did go to church twice a month but, due to her anxiety, needed someone to accompany her and avoided activities there. Tr. 249. Matthew reported Plaintiff was unable to finish what she started, could only pay attention for ten minutes, and had difficulties following basic instructions such as a simple recipe. Tr. 250.

In January 2020, Plaintiff's mother—Pamela—filled out a third-party Function Report, stating Plaintiff's extreme fatigue, weakness, panic attacks, and other symptoms limited her ability to work. Tr. 264. She reported that Plaintiff was "very dependent on others to help with all aspects of household needs." Tr. 264. She reported that Plaintiff no longer drove because past panic attacks made it too dangerous. Tr. 264. Pamela noted that Plaintiff rarely visited her best friend but did communicate through text messages and on the phone with her. Tr. 269. Pamela further reported that Plaintiff came to her house approximately once a week and talked with her on the phone or communicated through text messages daily. Tr. 269. According to Pamela, Plaintiff could not finish what she started and had difficulty following instructions because she could not concentrate and suffered from "brain fog." Tr. 270. Pamela reported that Plaintiff cried incessantly and that stress would cause her whole body to tremor. Tr. 271.

"Lay testimony as to a claimant's symptoms is competent evidence that the Secretary must take into account." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citation

omitted); 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1) ("In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence from your medical sources and nonmedical sources about how your symptoms affect you."). Under the 2017 regulations, the ALJ is not "required to articulate how [they] considered evidence from nonmedical sources" using the same criteria required for the evaluation of medical sources. 20 C.F.R. §§ 404.1520c(d), 416.920c(d). Under the new regulations, however, the ALJ must still articulate their assessment of lay witness statements. *Tanya L.L. v. Comm'r Soc. Sec.*, 526 F.Supp.3d 858, 869 (D. Or. 2021).

The ALJ must give reasons "germane to the witness" when discounting the testimony of lay witnesses. *Valentine,* 574 F.3d at 694. But the ALJ is not required "to discuss every witness's testimony on an individualized, witness-by-witness basis." *Molina*, 674 F.3d at 1114, *superseded on other grounds by* 20 C.F.R. § 404.1502(a). If the ALJ gives valid germane reasons for rejecting testimony from one witness, the ALJ may refer only to those reasons when rejecting similar testimony by a different witness. *Id*. Additionally, where "lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony," any error by the ALJ in failing to discuss the lay testimony is harmless. *Id*. at 1117, 1122.

Here, the ALJ erred by failing to assess testimony by Plaintiff's husband and mother. Both Plaintiff's husband and mother corroborated Plaintiff's testimony as to her difficulty in performing routine household activities, extreme fatigue, frequent crying, emotional fragility, trouble making decisions, and lack of concentration. Where there are minor differences, both lay witness testimonies describe less significant limitations than those described by Plaintiff, such as her ability to leave the house and to carry on conversations with others. *Compare* Tr. 205 ("the

only time I leave the house pretty much is to go to the doctor's"), *with* Tr. 269 (Pamela reports Plaintiff comes to her house "once a week") *and* Tr. 245 (Matthew reports he and Plaintiff take short walks together); *compare* Tr. 51 (Plaintiff reported that extreme fatigue "really affects my cognitive ability to have conversations") *and* Tr. 210 (Plaintiff reports she "can't have conversation"), *with* Tr. 269 (Pamela reports Plaintiff daily spends time talking and texting with others). Since Matthew's and Pamela's testimony do not describe any limitations not already described by Plaintiff and the ALJ's well-supported reason for rejecting Plaintiff's subjective testimony applies equally to Matthew and Pamela's testimony, the ALJ's error was harmless.

## CONCLUSION

Based on the foregoing, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED:  September 6, 2023     .


_Marco Hernandez_
MARCO A. HERNÁNDEZ
United States District Judge